IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

COMMERCIAL ROOFING SPECIALTIES, INC.,

     Plaintiff,

              v.

CRS ROOFING COMPANY and CLAYTON SHIPLEY,

     Defendants.

Civil Action No.
1:21-cv-02758-SDG

## OPINION AND ORDER

This matter is before the Court on Plaintiff Commercial Roofing Specialties, Inc.'s (CRS) motion for default judgement against Defendants CRS Roofing Company and Clayton Shipley (collectively, Defendants) [ECF 21]. For the following reasons, CRS's motion is **GRANTED in part and DENIED without prejudice in part**.

## I.   Background[1]

CRS, a roofing supply retailer and cargo unloading servicer, initiated this action against Defendants on July 9, 2021, for unauthorized use of its trade name

---

[1]   The following well-pleaded facts are deemed admitted for purposes of this Order. *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005).

and service mark (the Mark).[2] As alleged in the verified complaint, since 1981, CRS has used the Mark in connection with its business in Georgia, Florida, and Tennessee, including in Knoxville, Tennessee.[3] In May 2020, CRS discovered that Defendants were using the Mark for their competing roofing supply business in Sevierville, Tennessee, which is near Knoxville.[4]

CRS sent Defendants a demand letter, and, after negotiations, the parties executed a settlement agreement on September 16, 2020 (the Agreement).[5] The Agreement required Defendants to change their business name and cease all use of the Mark by May 16, 2021; transfer their domain name <crs-roofing.com> to CRS; and never use any mark or name like the Mark.[6] In exchange for Defendants' promises, CRS paid them $30,000.[7]

Defendants continued using the Mark and domain name <crs-roofing.com> beyond May 16, 2021, despite CRS's numerous attempts to correspond.[8] CRS has

---

[2]   ECF 1, at 1, 4.

[3]   *Id.* at 3–4.

[4]   *Id.* at 5.

[5]   *Id.* at 7.

[6]   *Id.*

[7]   *Id.*

[8]   *Id.* at 8.

asserted federal claims for trademark infringement[9] and unfair competition,[10] and state law claims for breach of contract,[11] unfair competition,[12] and deceptive trade practices.[13] CRS seeks injunctive relief, compensatory damages, restitution, Defendants' profits resulting from their use of the Mark, and attorneys' fees.[14]

Defendants have neither answered nor appeared in this Court in any manner, despite having been properly served on July 13, 2021.[15] Defendants' deadline to answer was August 3.[16] The Clerk of Court entered default as to Defendants on August 30. On November 15, 2021, CRS moved for a default judgment.[17] That motion is now ripe for consideration.

---

[9]   *Id.* at 9.

[10]   *Id.* at 10.

[11]   *Id.* at 11.

[12]   *Id.* at 13.

[13]   *Id.* at 14.

[14]   *Id.* at 17–18.

[15]   ECF 13; ECF 14.

[16]   *Id.*

[17]   ECF 21. The motion for default judgment was erroneously docketed as a notice and was consequently untimely submitted to the Court. The Court corrected the error to issue this Order.

II.    **Legal Standard**

Federal Rule of Procedure 55 establishes a two-step process for a party to obtain a default judgment. First, the party seeking default must obtain a Clerk's entry of default pursuant to Rule 55(a) by providing evidence "by affidavit or otherwise" that the opposing party "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Second, after the Clerk has made an entry of default, the party seeking the judgment must file a motion under Rule 55(b)(1) or (2). *Id. See also Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1360 n.1 (N.D. Ga.2011) ("First the clerk must enter a party's default . . . the party [seeking the default judgment] must then apply to the court for a default judgment.").

A defaulted defendant is deemed to have admitted the plaintiff's well-pleaded allegations of fact. *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005). However, a defaulted defendant is not held to admit facts that are not well pleaded or which constitute conclusions of law. *Id.* "[A] default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1371 n.41 (11th Cir. 1997) (citing *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Therefore, when considering a motion for default judgment, a court must investigate the legal sufficiency of the allegations and ensure the complaint states a plausible claim for relief. *Crossfit, Inc.*

*v. Quinnie*, 232 F. Supp. 3d 1295, 1304 (N.D. Ga. 2017). *See also Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) ("Conceptually . . . a motion for default judgment is like a reverse motion to dismiss for failure to state a claim."). Ultimately, an entry of a default judgment is committed to the discretion of the district court. *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1576 (11th Cir. 1985).

## III.    Discussion

### A.    Jurisdiction and Venue

The Court has subject matter jurisdiction over CRS's federal trademark infringement and unfair competition claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1337, and 1338. CRS's state law claims share a common nucleus of operative facts with its federal law claims. Through their default, Defendants admitted facts supporting CRS's federal causes of action. Accordingly, the Court exercises supplemental jurisdiction over CRS's state law claims pursuant to 28 U.S.C. § 1367(a). *See Growler Station, Inc. v. Foundry Growler Station, LLC*, 2019 WL 3769639, at *11 (N.D. Ga. Jan. 9, 2019) (exercising supplemental jurisdiction over a plaintiff's Georgia state law claims for trademark infringement and violation of the Uniform Deceptive Trade Practices Act arising "out of

common nucleus of operative fact with the federal trademark infringement claims").

In addition, as CRS alleges, Defendants consented to personal jurisdiction and venue in this district as parties to the Agreement, which contains a forum selection clause directing that disputes "shall be brought in the U.S. District Court for the Northern District of Georgia."[18] When parties have agreed to a valid forum selection clause, the clause should be given controlling weight in all but the most exceptional cases. *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 51 (2013). Here, the Court finds its exercise of subject matter jurisdiction, personal jurisdiction, and venue are proper.

**B.     CRS's Claims**

**1.     Federal Trademark Infringement**

CRS asserts a claim for federal trademark infringement under 15 U.S.C. § 1114, alleging that Defendants used the Mark without authorization.[19] Under the Lanham Act, a defendant is liable for trademark infringement if he, without consent, uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark . . . likely to cause confusion, or to cause

---

18   ECF 1, at 3; ECF 1-2, at 6.

19   ECF 1, at 9.

mistake, or to deceive." 15 U.S.C. § 1114. To prevail on such a claim, "the registrant must show (1) its mark was used in commerce by the defendant without the registrant's consent and (2) the unauthorized use was likely to cause confusion, or to cause mistake or to deceive." *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007).

### i.   Unauthorized Use of a Registered Mark in Commerce

CRS is the owner of the right, title, and interest in and to the U.S. Trademark Registration for the Mark.[20] The Mark is used for CRS's "on-line, wholesale, and retail store services featuring roofing supplies."[21] CRS claims Defendants, without permission, made use of the Mark for their roofing supply business in nearby Sevierville, Tennessee and on their websites.[22] That claim is admitted by function of Defendants' default.

### ii.   Likelihood of Confusion

Next, CRS argues Defendants' unauthorized use of the Mark will likely create consumer confusion.[23] This Circuit considers seven factors to determine

---

[20]   *Id.* at 4.

[21]   *Id.*

[22]   *Id.* at 5.

[23]   ECF 21-1, at 9.

whether customer confusion is likely to occur under the Lanham Act: (1) the type of mark; (2) the similarity of the mark; (3) the similarity of the products the marks represent; (4) the similarity of the parties' retail outlets and customers; (5) the similarity of advertising media; (6) the defendant's intent; and (7) any actual confusion. *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 935 (11th Cir. 2010) (quoting *Frehling Enters. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999)). None of the seven factors are dispositive, "but greater weight is given to the type of mark and evidence of actual confusion." *Crossfit, Inc.*, 232 F. Supp. 3d at 1305 (quoting *Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322, 326 (11th Cir. 1989)). However, a finding of actual confusion is not necessary to show a *likelihood* of customer confusion. *Wreal, LLC v. Amazon.com, Inc.*, 38 F.4th 114, 137 (11th Cir. 2022).

### *a.* Type of Mark

There are four recognized types of marks, ranging from weakest to strongest: generic, descriptive, suggestive, and arbitrary. *Aronowitz v. Health–Chem Corp.*, 513 F.3d 1229, 1240 (11th Cir. 2008). The stronger the mark, the greater the scope of protection accorded it. *Id.* In addition, if a mark is "incontestable" — that is, if it has been registered for five years with the Patent & Trademark Office, its holder has filed the affidavit required by 15 U.S.C. § 1065(3) with the Patent &

Trademark Office, and the Patent & Trademark Office has accordingly declared the mark "incontestable"—then the mark is presumptively strong. *Frehling Inc.*, 192 F.3d at 1336. *See also PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1166 (11th Cir. 2019) (finding an incontestable mark is presumed to be at least descriptive with secondary meaning, and therefore relatively strong); *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1311 (N.D. Ga. 2008) ("While suggestive and arbitrary marks are presumed entitled to protection, descriptive marks will be protected only when secondary meaning is shown.") (citation omitted).[24]

CRS avers that the Mark is strong by virtue of its continuous use since 1981, its federal registration, and its incontestable status.[25] CRS maintains it has held Registration Number 4803752 since September 1, 2015, and Registration Number 4900509 since February 16, 2016.[26] Further, though CRS does not say so, the Mark

---

[24]   "Secondary meaning is the connection in the consumer's mind between the mark and the provider of the service." *Investacorp, Inc. v. Arabian Inv. Banking Corp.*, 931 F.2d 1519, 1525 (11th Cir. 1991); *see also Welding Servs. v. Forman,* 509 F.3d 1351, 1358 (11th Cir. 2007) (citations omitted) ("A name has acquired secondary meaning when the primary significance of the term in the minds of the consuming public is not the product but the producer.").

[25]   ECF 21–1, at 9.

[26]   ECF 1, at 4.

appears to be an arbitrary mark, bearing no obvious relationship to the roofing services CRS provides. *Trilink Saw Chain, LLC*, 583 F. Supp. 2d at 1311 ("An arbitrary mark is a word or phrase that bears no relationship to the product.") (citation omitted). Through Defendants' default, the Court finds that Defendants admitted these well-pleaded allegations and the Mark is strong.

### b.   Similarity of Mark

Similarity of the mark is determined by "the overall impression created by the marks, including a comparison of the appearance, sound and meaning of the marks, as well as the manner in which they are displayed." *Caliber*, 605 F.3d at 939 (quoting *E. Remy Martin & Co. v. Shaw–Ross Int'l Imps., Inc.*, 756 F.2d 1525, 1531 (11th Cir. 1985)). *Cf. Crossfit, Inc.*, 232 F. Supp. 3d at 1307 (finding plaintiff's CROSSFIT® mark and Defendants' KrossFit mark had strong visual similarity, and the two marks sound identical).

CRS claims the Mark and Defendants' mark are identical and that Defendants used the Mark prominently along with the word "Roofing," which is present in CRS's full name.[27] CRS also claims Defendants featured the Mark on

---

[27]   ECF 21-1, at 9.

their websites.[28] The Mark and Defendants' mark are obviously similar, so this factor cuts in CRS's favor.

### c.      Similarity of the Products

In this Circuit, the test for similarity of products is whether the goods or services are so related in the minds of consumers that consumers get the sense a single producer is likely to put out both goods. *Frehling*, 192 F.3d at 1338 (finding home furnishing products were similar because, although the products themselves were somewhat dissimilar, they were sold under a similar label and thus it was possible a consumer could attribute both products to a single source). *See also Trilink Saw Chain, LLC*, 583 F. Supp. 2d at 1316 (holding the parties' products were similar because they used the marks on related products and the defendant did not object to the similarity).

CRS asserts the services it offers and Defendants' services were identical or nearly identical as both involve the sale of roofing supplies and other roofing-related services.[29] The Court finds that the services and products the parties provide are similar, if not identical.

---

28    ECF 1, at 5–6.

29    ECF 21-1, at 9.

### d.    Similarity of Advertising Media

Regarding the similarity of advertising media, the standard is whether there is likely to be significant enough overlap in the readership of the publications in which the parties advertise resulting in the possibility of confusion. *Frehling*, 192 F.3d at 1340. However, if the only similarity in advertising used by two parties is their maintenance of websites, this would dispel rather than cause confusion because the websites are separate and distinct, suggesting two unrelated entities. *Tana v. Dantanna's*, 611 F.3d 767, 778 (11th Cir. 2010). Indeed, in this day and age it would be unusual that two companies—whether involved in the same business or different trades—would not advertise their services online.

CRS assert that both parties advertise their services online through their respective websites.[30] Despite Defendants' default, the Court does not find that this factor weighs in Plaintiff's favor. At best, the evidence on the similarity of the parties' advertising is inconclusive.

### e.    Defendants' Intent

The intent factor looks to whether the allegedly infringing party adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation. *Caliber*, 605 F.3d at 940 (finding defendant intended to adopt

---

[30]   *Id.*

plaintiff's mark because the defendant had notice of the similarity and hence the possibility of confusion but continued to use plaintiff's mark); *Frehling*, 192 F.3d at 1340 (holding defendant intended to benefit from plaintiff's mark despite not consciously making the effort to do so because defendant was "intentionally blind" by failing to conduct a trademark search).

Given its federal registrations, CRS argues that Defendants were on notice of the Mark when they adopted their own mark.[31] Moreover, CRS claims that Defendants acted in bad faith by continuing to use the Mark after the Agreement was executed.[32] Under these facts, the Defendants had notice of the similarities between the Mark and their mark, and Defendants admit by virtue of their default that they intentionally adopted the Mark in an effort to derive a business benefit from CRS's reputation.

CRS does not address the similarity of the parties' retail outlets and customers or any actual confusion on the part of any customers. However, the balance of the other likelihood-of-confusion factors weighs in CRS's favor such that CRS has demonstrated a likelihood of confusion based on Defendants' unauthorized use of the Mark. Accordingly, CRS's Complaint states a claim for

---

[31]  *Id.*

[32]  *Id.*

trademark infringement under the Lanham Act, and CRS is entitled to default judgment on this claim.

### 2.     Unfair Competition and Deceptive Trade Practices

CRS asserts claims of unfair competition under federal and Georgia law and deceptive trade practices under Georgia law premised on Defendants' same infringing conduct. Courts apply the same likelihood-of-confusion test in assessing unfair competition claims under 15 U.S.C. § 1125(a)(1) in determining whether there has been federal trademark infringement in contravention of the Lanham Act. *Crossfit, Inc.*, 232 F. Supp. 3d at 1308. Unfair competition claims under O.C.G.A. § 23–2–55 and deceptive trade practices claims under O.C.G.A. § 10–1–372 implicate the same likelihood-of-confusion test. *ITT Corp. v. Xylem Grp., LLC*, 963 F. Supp. 2d 1309, 1326 (N.D. Ga. 2013).

By virtue of Defendants' default and per the same reasoning that applies to CRS's trademark claim under the Lanham Act, the Court concludes that CRS is entitled to default judgment on its federal and Georgia unfair competition claims and Georgia deceptive trade practices claim.

### 3.     Breach of Contract

CRS asserts a claim for breach contract based on the Agreement. The parties consented to Georgia law governing any legal actions arising from the

Agreement.[33] Under Georgia law, for a plaintiff to establish a breach of contract claim, it must show "(1) an enforceable agreement, (2) breach of that agreement, and (3) damages as a result of that breach." *Reindel v. Mobile Content Network Co., LLC*, 652 F. Supp. 2d 1278, 1287 (N.D. Ga. 2009) (citing *Broughton v. Johnson*, 247 Ga. App. 819, 820 (2001)).

CRS argues that the Agreement is an enforceable contract that Defendants materially breached by continuing to use the Mark in connection with their competing business beyond May 16, 2021.[34] Further, CRS alleges it suffered damages from Defendants' breach—specifically, the $30,000 it paid as consideration for Defendants to discontinue use of the Mark under the Agreement.[35] Defendants have admitted these factual allegations by virtue of their default, and CRS is entitled to default judgment on its breach of contract claim.

---

[33]   ECF 1, at 7–8.

[34]   *Id.* at 11–12.

[35]   ECF 21–1, at 11.

**IV.     Remedies**

For its relief, CRS has requested a permanent injunction against Defendants, restitution of the $30,000 paid to Defendants, and attorneys' fees and costs totaling $28,873.15.[36] The Court addresses each remedy in turn.

**A.     Injunctive Relief**

CRS requests the Court grant a permanent injunction against Defendants pursuant to the Agreement.[37] However, the consensus among reported decisions in the Eleventh Circuit is that contractual provisions regarding entitlement to injunctive relief are accorded little to no weight. *Dragon Jade Int'l, Ltd. v. Ultroid, LLC*, 2018 WL 1833160, at *4 (M.D. Fla. Jan. 30, 2018). To otherwise obtain injunctive relief, a party must demonstrate: (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). *See also B&G Equip. Co., Inc. v. Airofog USA, LLC*, 2019 WL 1974835 at *5 (M.D. Fla. Apr. 5, 2019) (concluding that regardless of the

---

[36]     *Id.* at 15.

[37]     ECF 1, at 12.

existence of a settlement agreement, the requesting party still has the obligation to ensure each element for injunctive relief is met), *report and recommendation adopted*, 2019 WL 2537792 (M.D. Fla. June 20, 2019).

CRS fails to allege a basis for injunctive relief independent from the terms of the Agreement.[38] Moreover, CRS makes no effort to explain why monetary damages are inadequate to compensate for Defendants' use of the Mark. Therefore, the Court denies CRS's request for permanent injunctive relief insofar as it is based on breach of the Agreement. The Court grants CRS leave to renew its request for permanent injunctive relief consistent with this Order, as explained below.

### B.    Restitution

CRS argues for restitution of the $30,000 it paid to Defendants pursuant to the Agreement.[39] It is well-settled that restitution is an available remedy for breach of contract under Georgia law. *Cutcliffe v. Chesnut*, 122 Ga. App. 195, 202 (1970). Restitution compels the defendant to restore the benefit in question or pay a monetary amount necessary to eliminate any unjust enrichment and return the

---

[38]   *Id.*

[39]   *Id.* at 18.

injured party to the precontract status quo. *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1368 (11th Cir. 2021).

CRS paid Defendants $30,000 in consideration for their commitment not to use the Mark.[40] Despite this payment, CRS maintains Defendants continued to use the Mark after May 16, 2021, substantially breaching the Agreement.[41] As a result, the Court finds that CRS is entitled to $30,000 in restitution.

## C.    Attorneys' Fees and Costs

CRS argues it is entitled to attorneys' fees and costs totaling $28,873.15 under the Lanham Act and per the parties' Agreement.[42]

To qualify for attorneys' fees and costs under the Lanham Act, 15 U.S.C. § 1117(a), CRS must show that this case qualifies as an "exceptional" one. *See Tobinick v. Novella*, 884 F.3d 1110, 1117 (11th Cir. 2018) (noting that a case is "exceptional" if it stands out from others with respect to the substantive strength of a party's litigating position or if the case is litigated in an unreasonable manner). The Court is not convinced that this "exceptional" standard has been met here.

---

[40]   *Id.* at 12.

[41]   *Id.*

[42]   ECF 21–1, at 11.

The Court need not resolve this question, however, because it finds that CRS is entitled to attorneys' fees and costs under the parties' Agreement.

Courts routinely enforce contractual provisions for attorneys' fees and litigation expenses. *Cheeley Invs., L.P. v. Zambetti*, 332 Ga. App. 115, 118 n.5 (2015) (collecting cases enforcing contractual provisions for attorneys' fees and costs without concern for the indefiniteness of potential fees and costs). Here, Paragraph 9(f) of the Agreement provides that, "in any action for breach of [the] Agreement, . . . the non-prevailing party will [be] liable to the prevailing party for the prevailing party's attorneys' fees and costs, regardless of whether such costs would be taxable pursuant to 28 U.S.C. § 1920."[43] CRS rightly asserts that, because Defendants violated the Agreement, it is owed attorneys' fees and costs under Paragraph 9(f).[44]

To determine compensable attorneys' fees in this Circuit, courts apply the lodestar method, which is based on the hours reasonably spent on the case multiplied by the reasonable hourly rate. *Johnston v. Borders*, 36 F.4th 1254, 1277–78 (11th Cir. 2022). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably

---

[43]   ECF 1-2, at 6.

[44]   *Id.* at 4–5; ECF 21-1, at 11.

comparable skills, experience, and reputation." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). Generally, the "relevant legal community" is that of the place where the case is filed. *Spurlock v. Complete Cash Holdings, LLC*, 2021 WL 1960634, at *3 (N.D. Ga. May 14, 2021). Thus, as CRS notes, the relevant legal community is Atlanta, Georgia.[45]

   In support of its bid for fees, CRS submitted redacted time records and an affidavit from its lead counsel, Johnathan T. Edwards.[46] Several Alston & Bird (A&B) professionals worked on this matter: a Charlotte-based senior associate billed 18.4 hours at a rate of $780 per hour; an Atlanta-based associate billed 1.3 hours at a rate of $700 per hour; two Atlanta-based partners billed 7.9 hours and 0.2 hours at rates of $865 and $840 per hour; an Atlanta-based paralegal billed 13.2 hours at a rate of $310 per hour; and an Atlanta-based intellectual property specialist billed 0.5 hours at a rate of $225 per hour.[47] The "Services Billed" accordingly amount to $26,468. Furthermore, A&B billed CRS for "Other Charges" totaling $2,405.15.[48] CRS requests the combined total, $28,873.15.[49]

---

[45]   ECF 21-1, at 14.

[46]   *See generally* ECF 21-3.

[47]   *Id.*

[48]   *Id.*; *See generally* ECF 21-2.

[49]   ECF 21-1, at 11.

Based on its knowledge of the Atlanta legal market, the Court finds that the requested hourly rates and time expended generally on this matter are reasonable and consistent with other large firms in Atlanta. However, the Court declines to award fees for the Atlanta-based partner who billed 0.2 hours at $840 per hour, or the $1,853.15 in "Other Charges," the purposes for which were completely redacted from the submitted invoices and otherwise unexplained. The Court finds that CRS did not provide a sufficient explanation as to why these fees or costs should be granted. In addition, the Court declines to award fees and costs for any action A&B took before May 16, 2021, the date Defendants breached the Agreement and on which CRS's entitlement to fees and costs under Paragraph 9(f) is predicated. Accordingly, the Atlanta-based partner's charges and the "Other Charges" detailed in this paragraph, as well as A&B's billing entries on May 6, May 13, and May 14, are subtracted from the award of fees. The adjusted balance of attorneys' fees to be awarded is $26,440.[50]

## V.   Conclusion

CRS's default judgment motion [ECF 21] is **GRANTED in part and DENIED without prejudice in part**. Within 30 days of entry of this Order, CRS

---

[50] This amount reflects $28,873.15—CRS's requested sum—less $2,433.15 in "Services Billed" and "Other Charges" unsupported by the record.

may renew its motion for default judgment with regard to seeking permanent injunctive relief or, alternatively, notify the Court that it will decline the invitation to do so. Given the passage of time since the filing of the motion for default judgment and the invitation herein for a renewed motion concerning injunctive relief, CRS may also include in any such filing a supplementary request for attorneys' fees and costs. If CRS neither renews its motion nor files a supplementary request for fees and costs, this Order shall be deemed final and CRS shall be entitled to judgment in the amount of $56,440, inclusive of restitution and reasonable fees and costs.

The Clerk is **DIRECTED** to resubmit this Order to undersigned in 30 days.

**SO ORDERED** this 13th day of February, 2023.

Steven D. Grimberg
United States District Court Judge